RALPH B. GUY, JR., Circuit Judge,
dissenting.
I depart from the majority because I believe the Good Manufacturing Practices (GMPs) set forth in 21 C.F.R. § 820.70(h) and incorporated into the FDA’s Premark-et Approval (PMA) for the NK-II implant should not be interpreted as establishing a “requirement” of “actual removal” upon which a negligence per se claim may be predicated. The Supreme Court in Riegel found that the FDA’s premarket approval of a Class III medical device imposed device-specific requirements, and that such requirements would preempt state common-law claims to the extent that the state requirements “are ‘different from, or in addition to’ the requirements imposed by federal law.” Riegel v. Medtronic, Inc., 552 U.S. 312, 330, 128 S.Ct. 999, 169 L.Ed.2d 892 (2008) (quoting 21 U.S.C. § 360k(a)). That also means that § 360k(a) will not bar a state-law remedy premised upon violation of federal regulation if “the state duties in such a case ‘parallel,’ rather than add to, federal requirements.” Id. (citation omitted). Thus, plaintiffs remaining negligence per se the *443 ory premised upon an alleged violation of § 820.70(h), may escape preemption if it is based on duties that are “parallel” to the FDA’s federal requirements for the NK-II implant.
The PMA for the NK-II implant imposed extensive device-specific requirements concerning design, manufacture, quality control, and marketing. Each step of the manufacturing process was detailed — including providing procedures and protocols for at least six different cleaning processes. As the district court found, the PMA application specified the cleaning procedures to be used for the removal of “manufacturing materials” such as machine oil. Plaintiff was unable to show that Sulzer failed to comply with the PMA’s procedures and protocols, and a common-law claim for failure to use a different cleaning method would be preempted. What remains is plaintiffs claim that, irrespective of whether Sulzer complied with the approved device-specific procedures for cleaning the NK-II implant, Sulzer’s statement in the PMA application that it would comply with the GMPs for all medical devices established a federal requirement that it actually remove any manufacturing materials that “could reasonably be expected to have an adverse effect on product quality.” 21 C.F.R § 820.70(h) (“Subpart G — Production and Process Controls”).
The pertinent language from § 820.70(h), which bears repeating, states that “the manufacturer shall establish and maintain procedures for the use and removal of such manufacturing material to ensure that it is removed or limited to an amount that does not adversely affect the device’s quality.” As the majority opinion illustrates, this language is susceptible to more than one interpretation. In my view, however, § 820.70(h) should not be interpreted to both require procedures and mandate outcomes. It would be another story if the regulation said “and ensure” rather than “to ensure”; but it does not. See also Medical Device Quality Systems Manual, HHS. Pub. No. 97-4179, at 7-4 (“Section 820.70(h) requires a written procedure for the use and removal of manufacturing materials that can have an adverse effect on devices.”). Nor do the references to “removal” in the FDA’s comments and guidance document persuade me otherwise because removal (or reduction) of such materials is plainly the object of the procedures which are explicitly required by § 820.70(h). This view is also consistent with the requirements of other Quality System Regulations that make up the GMPs for a broad range of medical devices (“Part 820-Quality System Regulation”). In the absence of a more explicit indication that § 820.70(h) requires “actual removal,” I would affirm the judgment of the district court.